**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Tynaysha Horton, Appellant,

v.

City of Columbia, Respondent.

Appellate Case No. 2012-211168

———————

Appeal From Richland County
Alison Renee Lee, Circuit Court Judge

———————

Opinion No. 2014-UP-491
Heard October 16, 2013 – Filed February 26, 2014

———————

**AFFIRMED**

———————

James Emerson Smith, Jr. and Dylan Ward Goff, both of
James E. Smith Jr., PA, of Columbia, for Appellant.

Jeanne J. Brooker and David Amado Fernandez, both of
Columbia, for Respondent.

———————

**KONDUROS, J.:** Tynaysha Horton appeals the circuit court's grant of summary judgment in favor of the City of Columbia regarding her claims for false arrest,

false imprisonment, malicious prosecution, negligence, and assault and battery. We affirm.

## FACTS/PROCEDURAL HISTORY

On September 9, 2009, a cinder block was thrown through a glass door to break into the Roly Poly restaurant in Columbia. Officer Peter Currie of the City of Columbia Police Department lifted a partial latent fingerprint from the door where the glass had been pushed up to gain entry. Officer Currie ran the print through the Automatic Fingerprint Identification System (AFIS) of the South Carolina Law Enforcement Division (SLED). AFIS returned twenty possible matches, with the fingerprint of Horton identified as the most probable match. Officer Currie then conducted a review of Horton's AFIS print and determined it matched the partial print taken from the crime scene.[1] Officer Currie informed Officer Roberta Tyler, the detective assigned to investigate the robbery, that he had matched the fingerprint of the robber and identified Horton as the person who broke into the restaurant.

On September 15, 2009, Officer Tyler called Horton's probation officer, Albert Smith, in Bennettsville, South Carolina, and informed Agent Smith her department was seeking a warrant for Horton's arrest based on fingerprints lifted from a crime scene in Columbia. Agent Smith informed Officer Tyler of his personal reservations regarding the possibility that Horton committed the crime based upon her lack of transportation and the recent birth of her third child. On September 17, 2009, Officer Tyler appeared before a ministerial recorder of the City of Columbia and disclosed relevant facts about the crime. Officer Tyler did not disclose any information relayed to her by Agent Smith. The ministerial recorder issued warrants for Horton's arrest for second-degree burglary and petit larceny. Agent Smith assisted in having Horton surrender herself to Marlboro County law enforcement officers later that day. Officer Tyler transported Horton to Columbia and took her to the detention center on September 18, 2009. Horton was not fingerprinted at the time of her arrest. After three days in detention and several requests to be fingerprinted, Horton was fingerprinted by Officer Currie on September 21, 2009. After examining the prints and sending them to SLED for

---

[1] This review included analysis of the fingerprint by two other officers.

further review, the authorities could not confirm a match for the prints taken from the crime scene. Horton was immediately released from custody and police officials drove her to Bishopville to meet her mother and return home.

Horton filed suit alleging causes of action for false arrest, false imprisonment, malicious prosecution, negligence, and assault and battery. The City moved for summary judgment as to all claims and the circuit court granted the City's motion. This appeal followed.

## LAW/ANALYSIS

### I.      The Two-Issue Rule

The City argues this court should affirm the circuit court's grant of summary judgment based on the two-issue rule. We agree in part.

"Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case." *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010); *see also First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 566, 511 S.E.2d 372, 378 (Ct. App. 1998) (holding an "unchallenged ruling, right or wrong, is the law of the case and requires affirmance").

In *Jones*, Jones's estate sued the Richland County sheriff and other officers for wrongful death after Jones was shot attempting to escape police custody. 387 S.C. at 344, 692 S.E.2d at 902. At trial, Jones asserted the sheriff was grossly negligent.[2] *Id.* The trial court granted a directed verdict in the defendant's favor finding he was not grossly negligent under the circumstances, and because he had immunity under subsection 15-78-60(6) of the South Carolina Code (2005) (the Tort Claims Act). *Id.* On appeal, Jones stated his issue as follows: "Did the trial court err in finding the use of deadly force by the Richland County deputies was objectively reasonable, as a matter of law, and that the officers were not negligent, as a matter of law?" *Id.* at 347-48, 692 S.E.2d at 904. In determining whether the two-issue rule procedurally barred Jones's appeal, the supreme court stated:

---

[2] The circuit court granted summary judgment in favor of the other defendants but allowed the case to proceed as to Jones's claim of gross negligence against the sheriff in his official capacity.

> There was no mention of [sub]section 15-78-60(6) or
> Tort Claims Act immunity [in Jones's issues on appeal]. .
> . . The issue raised by [Jones] was not concise and direct,
> but rather a broad general statement that ought to be
> disregarded by this court.  Hence, because [Jones] failed
> to preserve the issue for review, it became the law of the
> case under the two issue rule.

*Id.* at 348, 692 S.E.2d at 904.

In this case, the circuit court spent the bulk of its time considering the probable cause issue in deciding to grant summary judgment.  However, in section E of the final order, the circuit court addressed the City's Tort Claims Immunity argument as an additional sustaining ground.  Subsection 15-78-60(5) of the South Carolina Code (2005) precludes liability by a governmental entity for a loss resulting from the exercise of discretion or judgment by a governmental employee, or the performance or failure to perform any act or service that is in the discretion or judgment of the employee.  The final order and the City's argument clearly focused on this section as it applied to Officer Currie's erroneous identification of Horton's fingerprints, suggesting the only cause of action at issue is Horton's negligence claim.  However, the order states, "The City is also entitled to summary judgment on the claims for false arrest, false imprisonment, malicious prosecution and negligence based upon this provision of the South Carolina Tort Claims Act."  While this ruling by the circuit court may be erroneous as to the false arrest, false imprisonment, and malicious prosecution claims, Horton makes no mention of subsection 15-78-60(5) or the Tort Claims Act in her appellate brief.  We cannot conclude that an attack on the Tort Claims Act ruling is inherent in Horton's argument as to lack of probable cause.[3]  Therefore, the circuit court's grant of summary judgment to the City with respect to negligence, false arrest/imprisonment, and malicious prosecution is affirmed based on the two-issue rule.

---

[3] Horton's issue on appeal is broad and does not provide any direction as to why the application of the Tort Claims Act was erroneous.  It states: "Did the order issued by the circuit court granting the City's motion for summary judgment constitute a clearly arbitrary and capricious abuse of discretion as there were genuine issues of material fact in dispute?"

## II.    Claims on the Merits

Horton's only remaining cause of action is for assault and battery.  She maintains the circuit court erred in finding that because her arrest was based on a facially valid warrant and she did not allege the use of excessive force, the claim failed as a matter of law.  We disagree in some respects with the circuit court's rationale but affirm its granting of summary judgment to the City.

In *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671-72 (D.S.C. 1995), the court concluded as a matter of law that no assault and battery occurred when an officer lawfully arrested Roberts based on probable cause and the use of excessive force was not alleged.  The court found Roberts's arrest "was lawful because it was supported by probable cause.  Therefore, [the officer's] action in arresting [him] did not constitute assault or battery. . . . "  *Id*. at 672.  The court further provided Roberts "does not allege [the arresting officer] used excessive force. . . . [His] actions are insufficient, as a matter of law, to support a claim of assault or battery, given this court's conclusion that [Roberts's] arrest was based on probable cause."  *Id.* at 672 n.2.  In addressing assault and battery claims against police authority the Supreme Court of South Carolina has stated:

> An unlawful arrest, or an attempt to make an unlawful arrest, stands upon the same footing as any other nonfelonious assault, or as a common assault and battery. The person who is so unlawfully arrested, or against whom such an unlawful attempt is directed, is not bound to yield, and may resist force with force, but he is not authorized to go beyond the line of force proportioned to the character of the assault, or he in turn becomes a wrongdoer . . . .

*State v. McGowan*, 347 S.C. 618, 623, 557 S.E.2d 657, 660 (2001) (emphasis omitted) (quoting *State v. Francis*, 152 S.C. 17, 34-35, 149 S.E. 348, 355-56 (1929)).

South Carolina appears to be in the minority of jurisdictions where an unlawful arrest, even in the absence of excessive force, can support a claim for assault and

battery.[4]  In *Roberts*, the district court, applying South Carolina state law to the claim of assault and battery, rested its conclusion to dismiss the claim upon the fact that Roberts's arrest was lawful—based on probable cause.  *Roberts*, 902 F. Supp. at 672 n.2.  In *McGowan*, the court was concerned with whether McGowan had used excessive force in resisting arrest.  *McGowan*, 347 S.C. at 624-26, 557 S.E.2d at 661-62.  Although Horton did not resist arrest, the basic principle of law that an unlawful arrest may constitute a battery is still applicable.  Furthermore, in *Francis*, upon which *McGowan* relies in part, the court recited a jury instruction that was not objected to on appeal.  *Francis*, 152 S.C. at 32, 149 S.E. at 354.  That charge supports the notion that police officers are not immune from assault and battery claims if they effect an unlawful arrest.  The charge stated: "If an arrest is unlawful, the defendant had the right not only to resist it, but it made the person or officer attempting such arrest liable for assault and battery and false arrest."  *Id*.  Based on the foregoing cases, we conclude a police officer may be liable for assault and battery for making an unlawful arrest even in the absence of excessive force allegations.

The next question presented is whether Horton's arrest was lawful.

> The fundamental issue in determining the lawfulness of an arrest is whether there was probable cause to make the arrest.  Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise.

*Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 441, 629 S.E.2d 642, 651 (2008) (citation omitted).

The question of whether probable cause exists is ordinarily a jury question unless the evidence yields but one conclusion as a matter of law.  *Id.*  The party alleging a lack of probable cause bears the burden of proof on that point.  *Jackson v. City of Abbeville*, 366 S.C. 662, 666, 623 S.E.2d 656, 658 (Ct. App. 2005).

---

[4] "While, in some jurisdictions, a police officer who makes an unlawful arrest is liable for battery for touching the arrestee, it is usually held a battery does not occur in making an unlawful arrest absent the use of excessive force."  6 Am. Jur. 2d *Assault and Battery* § 98 (2008) (footnote omitted).

Horton contends the circuit court erred in finding Officer Tyler's affidavit provided probable cause for her arrest, because Officer Tyler omitted any information from Agent Smith regarding Horton's transportation and family issues. We disagree.

"*Franks* [*v. Delaware*, 438 U.S. 154 (1978)] addressed an act of *commission* in which false information had been included in the warrant affidavit. However, the *Franks* test also applies to acts of *omission* in which exculpatory material is left out of the affidavit." *State v. Missouri*, 337 S.C. 548, 554, 524 S.E.2d 394, 397 (1999). "To be entitled to a *Franks* hearing for an alleged omission, the challenger must make a preliminary showing that the information in question was omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge. There will be no *Franks* violation if the affidavit, including the omitted data, still contains sufficient information to establish probable cause." *Id.* (footnote omitted). Entitlement to a *Franks* hearing is a matter of law subject to *de novo* review. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008).

> While omissions may not be *per se* immune from inquiry, the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit. The potential for endless rounds of *Franks* hearings to contest facially sufficient warrants is readily apparent.

*United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (citations omitted).

Inferring bad motives from an officer's omission of information "collapses into a single inquiry the two elements–'intentionality' and 'materiality'–which *Franks* states are independently necessary." *Id.* A party attempting to demonstrate information was intentionally or recklessly omitted from an affidavit bears a heavy burden of proof. *Tate*, 524 F.3d at 454. "'[M]ere[ ] negligen[ce] in . . . recording the facts relevant to a probable-cause determination' is not enough." *Colkley*, 899 F.2d at 301 (quoting *Franks*, 438 U.S. at 170).

In this case, as the circuit court noted, Horton offered no evidence Officer Tyler omitted Smith's statements with the intent to mislead the ministerial recorder. *Colkley* makes clear the Fourth Circuit's disdain for the notion that bad motive can be inferred from the materiality of the omitted information. However, it is less clear how the Fourth Circuit would evaluate the omission under the reckless disregard prong of *Franks*.[5] If reckless disregard can only be established by affirmative proof, without reference to the nature of the omitted material, it is difficult to imagine how any party would ever be entitled to a *Franks* hearing on omitted information. Nevertheless, the Fourth Circuit has clearly set a very high standard for establishing entitlement to a *Franks* hearing. Therefore, we agree with the circuit court that Horton did not establish her entitlement to a *Franks* hearing. Officer Tyler's affidavit and the arrest warrants are therefore reviewed without the inclusion of Smith's statements and provide probable cause for Horton's arrest. Consequently, her arrest was lawful, and it follows that her claim for assault and battery fails as a matter of law and summary judgment was appropriate.

## CONCLUSION

We affirm summary judgment in favor of the City as to Horton's claims for false arrest/imprisonment, malicious prosecution, and negligence based on the two-issue rule. We affirm the grant of summary judgment in favor of the City on assault and battery based on Horton's failure to meet the high burden of proving the intentional or reckless omission of Agent Smith's statements from Officer Tyler's affidavit.

**AFFIRMED.**

**FEW, C.J., and PIEPER, J., concur.**

---

[5] Notably, *Colkley* was a direct response to the district court's finding that because the officer chose to omit certain information, as opposed to omitting it accidentally, the intentionality requirement for a *Franks* hearing was satisfied. *Colkley*, 899 F.2d at 300.